IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LORA BAKER**, et al., | : | CIVIL ACTION NO. 1:06-CV-1874 |
| Plaintiffs | : | (Judge Conner) |
| v. | : | |
| **WASHINGTON GROUP INTERNATIONAL, INC.**, | : | |
| Defendant | : | |

## MEMORANDUM

The dispute in the instant case centers around the decision of defendant Washington Group International, Inc. ("WGI") to discontinue the employment of the eighty plaintiffs.[1] Plaintiffs assert a claim pursuant to the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. §§ 2101-2109, and a claim

---

[1] The plaintiffs are Lora Baker, Daniel Barner, Victor Barnes, Edward Beleck, Dennis Bell, Barbara Bitner, Sandra Bitner, Lisa Bitting, Melissa Black, Mike Brookhart, Sharon Brookin, Sandra Brown, Sybil Brown, Victoria Carl, William Chaney, Karl Codner, Kathleen Daly, Bryan Davis, Donna Dickens, Thu Do, Kathy Dowling, Lynne Ellis, Dale Fissel, Gary Folcik, Gregory Forsythe, George Garbarino, Barbara Haas, Cheryl Hardy, Teresa Hart, Rosemary Harvey, Randy Hays, Michelle Hefflefinger, Mary Patricia Henry, Kelly Hossen, Dawn Hulse-Childs, Mary Johnson, Vicki Jones, Christen Keeney, Timothy Kenyon, Tonhu Kim, Jodi Klinepeter, Roseann Laconte, Patricia Leer, Marylynn Mackey, Bonnie Manning, Nancy Matty, David McDonald, Cathy Brown McNeely, Romonita Mercado, Bruce Mizak, Scott Nedrow, Debra Nelson, Shirley Norton, Brenda Nye, Naomi Nye, Joyce Palmer, Catherine Pelles, Dia Pham, Dwayne Priar, Donna Pursel, Sandra Randt, Clair Rice, Nancy Scharding, Janice Shadel, Mark Shaffer, Charlotte Smith, Raymond Staub, Beverly Steinour, Joe Stokes, Susan Stump, Jason Swinchock, Daniel D. Tedesco, Joyce Tracey, David Travis, Dean Trump, Elizabeth Valle, Annette Viccaro, Linda Wallower, Stephen Walter, and Julia Warfel.

of fraudulent inducement pursuant to state law.[2]  Presently before the court is WGI's motion for partial summary judgment (Doc. 23) on plaintiffs' WARN Act claim.  For the reasons that follow, the motion for partial summary judgment (Doc. 23) will be granted.

## I.    Statement of Facts[3]

Plaintiffs are former employees of WGI's Mechanicsburg, Pennsylvania facility, which performed inventory, planning, and purchasing functions for IBM on a contract basis.  (Doc. 1 ¶¶ 3-82, 85-86; Doc. 10 ¶¶ 3-82, 85-86.)  WGI's contract with IBM was originally scheduled to expire on December 31, 2005, but was later extended for a period of three months to March 31, 2006.  (Doc. 28, Ex. A.)  According to WGI, on February 28, 2006, IBM advised WGI that its contract would not be renewed for an additional term and would instead be assumed by Manpower, Inc..  (Doc. 24 ¶¶ 5-6; Doc. 35 ¶ 6.)  The following day, WGI's Director of Operations, David Rose, communicated with Manpower representatives, who confirmed that the company wished to continue to use WGI's employees to service the contract with IBM.  (Doc. 24 ¶¶ 1, 7; Doc. 35 ¶¶ 1, 7.)  On March 3, 2006, the 131

---

[2] Plaintiffs originally asserted a claim pursuant to the waiver provisions of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634.  The court granted judgment in favor of WGI with respect to this claim in a memorandum and order dated February 6, 2008.  (See Doc. 34.)

[3] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to plaintiffs, the non-moving parties.  See infra Part II.

affected WGI employees[4] were verbally advised that the company had lost its contract with IBM and that they would no longer by employed by WGI effective March 31, 2006.  (Doc. 1 ¶¶ 87, 89; Doc. 10 ¶¶ 87, 89; Doc. 24 ¶ 13; Doc. 35 ¶ 13.)  A representative of Manpower attended the March 3, 2006 meetings and informed the affected WGI employees that they would be offered employment with Manpower and would maintain their current positions and salaries.  (Doc. 24 ¶¶ 9, 10; Doc. 35 ¶¶ 9, 10.)  On March 6, 2006, WGI provided the affected employees with additional information concerning severance entitlement and benefit termination.  (Doc. 24 ¶ 12; Doc. 35 ¶ 12.)

Ultimately, Manpower hired 104 of WGI's former employees, including sixty-five of the eighty plaintiffs in the instant case,[5] to service the IBM contract.  (Doc. 24 ¶¶ 17-19, 32; Doc. 35 ¶¶ 17-19, 32.)  The employees hired by Manpower earned the same hourly wage as they had when they were employed by WGI and continued to work a Monday through Friday schedule.  (Doc. 24 ¶¶ 20-23; Doc. 35 ¶¶ 20-23.)  The employees hired by Manpower suffered no gap in employment, as they were

---

[4] WGI continues to employ approximately 300 individuals in Mechanicsburg, but these individuals service contracts with companies other than IBM.  (Doc. 24 ¶ 3; Doc. 35 ¶ 3.)

[5] The fifteen plaintiffs who were not hired by Manpower are Lora Baker, Sandra Brown, Sybil Brown, Donna Dickens, Dawn Hulse-Childs, Vicki Jones, Timothy Kenyon, Cathy Brown McNeely, Debra Nelson, Joyce Palmer, Catherine Pelles, Donna Pursel, Joe Stokes, Stephen Walter, and Julia Warfel.  (Doc. 24 ¶¶ 17-19, 32; Doc. 35 ¶¶ 17-19, 32.)

terminated by WGI on March 31, 2006 and re-hired by Manpower on April 1, 2006. (Doc. 24 ¶ 24.)

Plaintiffs now claim that WGI's actions violated the WARN Act, which requires employers to provide their employees with sixty days' notice in advance of a plant closing or mass layoff. (See Doc. 1 ¶¶ 99-118); see also 29 U.S.C. §§ 2101-2109. On May 25, 2007, WGI filed the instant motion for partial summary judgment, asserting that plaintiffs do not qualify for the protections of the WARN Act because they did not suffer an employment loss. (See Doc. 23.) The motion has been fully briefed and is ripe for disposition.

## II.   Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

**III.    Discussion**

The WARN Act "provides protection to workers, their families and communities by requiring employers [of 100 or more employees] to provide notification 60 calendar days in advance of plant closings and mass layoffs." 20 C.F.R. § 639.1; see also Palmer v. Reese Bros., Inc., 160 F. App'x 173, 175 (3d Cir. 2005). The requirement of advance notice is intended to provide "workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market." 20 C.F.R. § 639.1. Employers who violate the WARN Act's notification requirements are liable to each affected employee for "back pay for each day of the violation." 29 U.S.C. § 2104(a)(1); see also Palmer, 160 F. App'x at 175-76.

To establish a *prima facie* case pursuant to the WARN Act, a plaintiff must prove that: (1) "the organization employed at least 100 employees, excluding part-time employees" as of the date notification was due, and (2) the organization effected "a plant closing or mass layoff as defined by the Act." Palmer, 160 F. App'x at 176; see also 29 U.S.C. §§ 2101(a)(1), 2102(a); Johnson v. Telespectrum Worldwide, Inc., 29 F. App'x 76, 77 (3d Cir. 2002). In the instant case, it is undisputed that WGI employed over 100 employees on the date that notification was due. Therefore, the dispositive question before the court is whether WGI's actions constituted a plant closing or mass layoff.

A plant closing is defined as "the permanent or temporary shutdown of a single site of employment . . . if the shutdown results in employment loss . . . during any 30-day period for 50 or more employees excluding any part-time employees," 29 U.S.C. § 2101(a)(2), while a mass layoff is defined as "a reduction in force which is not the result of a plant closing[] and [which] results in an employment loss at [a] single site of employment during any 30-day period for at least 33 percent of the employees (excluding any part-time employees) and at least 50 employees (excluding any part-time employees)," id. § 2101(a)(3). The definitions of both plant closing and mass layoff turn on the phrase "employment loss," which is defined as "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6-month period." Id. § 2101(a)(6).

In the instant case, WGI argues that its actions did not trigger WARN Act notice requirements because fifty or more employees did not suffer an "employment loss." Recognizing the WARN Act's remedial purpose, courts have utilized a "practical, effects-driven analysis of whether a break in employment actually occurred" to determine whether a company's actions resulted in an employment loss. Wiltz v. M/G Transp. Servs., Inc., 128 F.3d 957, 964 (6th Cir. 1997); see Dingle v. Union City Chair Co., 134 F. Supp. 2d 441, 444 n.2 (W.D. Pa. 2000) (citing Moore v. Warehouse Club, Inc., 992 F.2d 27, 29-30 (3d Cir. 1993)); Gonzalez v. AMR Servs. Corp., 68 F.3d 1529, 1531 (2d Cir. 1995); New York's Health & Human

Serv. Employees Union v. Grossman, No. 02-6031, 2007 WL 2907386, at *21 (E.D.N.Y. Oct. 3, 2007); Kephart v. Data Systems Intern., Inc., 243 F. Supp. 2d 1205, 1224 (D. Kan. Jan. 16, 2003); Local 819, Int'l Bhd. of Teamsters, AFL-CIO v. Textile Deliveries, Inc., No. 99-1726, 2000 WL 1357494, at *4 (S.D.N.Y. Sept. 20, 2000).  Using this practical, effects-driven analysis, the court will address the issue of whether an employment loss resulted from WGI's actions.

Of the WARN Act's three alternative definitions of employment loss, see 29 U.S.C. § 2101(a)(6), only the phrase "employment termination" is implicated by the facts of the instant case.[6]  Because the term "employment termination" is not defined by the WARN Act, courts must consider principles of statutory construction to ascertain its meaning.  One such principle of statutory construction is that "words will be interpreted as taking their ordinary, contemporary, common meaning."  Moore, 992 F.2d at 29 (3d Cir. 1993) (quoting Perrin v. United States, 444 U.S. 37, 42 (1979)).  The United States Court of Appeals for the Third Circuit has held that the "ordinary meaning of the word 'terminate' in an employment context is . . . '[t]o discontinue the employment of.'"[7]  Moore, 992 F.2d at 29; see also

---

[6] There is no dispute that WGI's actions did not involve a layoff exceeding six months or a reduction in work hours of greater than fifty percent.  29 U.S.C. § 2101(a)(6).

[7] Department of Labor regulations attribute to the word "termination" its "common sense meaning," to wit, "the permanent cessation of the employment relationship."  Worker Adjustment and Retraining Notification, 54 Fed. Reg. 16,042, 16,047 (Apr. 20, 1989) (to be codified at 20 C.F.R. pt. 639); see also Wiltz, 128 F.3d at 963; Int'l Alliance of Theatrical & Stage Employees v. Compact Video Servs., Inc., 50 F.3d 1464, 1466 (9th Cir. 1995).

Johnson, 61 F. Supp. 2d at 123 n.6; United Mine Workers of Am., Dist. 2 v. Florence Mining Co., 855 F. Supp. 1466, 1473 (W.D. Pa. 1994).

The continuity of one's employment is not dependent upon his or her relationship with a particular employer. As the United States District Court for the Eastern District of New York has stated, the WARN Act "was not enacted to provide continuous employment with any given employer." Martinez v. Caravan Transp., Inc., 253 F. Supp. 2d 403, 413 (E.D.N.Y. 2003). To the contrary, the WARN Act was enacted to guard against only those situations in which large numbers of employees are faced with extended job loss and the need to obtain alternative jobs or job skills. See 20 C.F.R. § 639.1. Mindful of this purpose, numerous courts have held that individuals whose employment was "essentially continuous" because they were transferred from one employer to another were not terminated for purposes of the WARN Act. See Martinez, 253 F. Supp. 2d at 413 (holding that employees who "did not suffer a break in employment" after being laid off by former company and rehired by its successor were not "terminated" for purposes of the WARN Act); see also Rifkin v. McDonnell Douglas Corp., 78 F.3d 1277, 1282 (8th Cir. 1996) (concluding that an employee who is "rehired in the same position" is not "terminated" for purposes of the WARN Act because the rehired employee has "no need for retraining or alternative jobs"); Presser v. Key Food Stores Co-op., Inc., No. 01-8059, 2006 WL 2086346, at *11 (E.D.N.Y. July 25, 2006) (holding that union employees who were hired by purchaser of business on the final day of their employment by seller did not suffer an employment loss under the "practical,

8

effects-driven analysis" utilized in construing the WARN Act); Alter v. SCM Office Supplies, Inc., 906 F. Supp. 1243, 1250 (N.D. Ind. 1995) (finding that employees who were hired by purchaser of business within a few days of termination by seller did not suffer an "'employment termination' (i.e. a permanent cessation of the employment relationship)"). In other words, terminations that are "at best technical" do not fall within the purview of the WARN Act. Wiltz, 128 F.3d at 964.

The Third Circuit addressed the issue of whether a technical termination implicates the WARN Act in Moore v. Warehouse Club, Inc., 992 F.2d 27 (3d Cir. 1993). In that case, the employees of one of the defendant's many retail stores arrived at work to find that the store had been permanently closed. The employees were given the option of continuing their employment with the defendant at an alternate location. The employees asserted a WARN Act claim, alleging that they suffered an employment loss because the defendant transferred them without providing them notice "prior to the closing" as required by the transfer exclusion.[8] Id. at 29; see also 29 U.S.C. § 2101(b)(2). The Third Circuit rejected the employees' argument because it was premised upon an overly technical interpretation of the

---

[8] The transfer exclusion provides, in pertinent part, as follows:

> [A]n employee may not be considered to have experienced an employment loss if the closing or layoff is the result of the relocation or consolidation of part or all of the employer's business and, *prior to the closing* or layoff--
> (A) the employer offers to transfer the employee to a different site of employment within a reasonable commuting distance with no more than a 6-month break in employment . . . .

29 U.S.C. § 2101(b)(2) (emphasis added).

transfer exclusion and reasoned that such an interpretation "overlooks the underlying purposes of the [WARN Act]." Moore, 992 F.2d at 30. Rather than focusing on the exacting requirements of the transfer exclusion, the Third Circuit turned to the term "employment loss" itself and concluded that no such loss had resulted because the situation did not create "a need to ensure adequate opportunities (by way of notice of imminent employment loss) for retraining and/or reemployment." Id.

Like the employees in Moore, 104 of the 131 affected employees[9] in the instant case suffered only the most minimal gap in employment, as they were terminated by WGI on March 31, 2006 and re-hired by Manpower the following day. No need for retraining or reemployment arose when these employees were technically terminated by WGI. Consonant with the practical, effects-driven analysis utilized by the Third Circuit in Moore, the court finds that the 104 employees who were re-hired by Manpower were not terminated for purposes of the WARN Act. The WARN Act's remedial purposes would not be served by requiring WGI to provide sixty days' notice to 104 individuals who did not suffer any appreciable break in employment and had no practical need to receive such notice. Even assuming that the twenty-seven affected employees who were not re-hired by Manpower suffered an "employment loss," plaintiffs' claim would fail to meet the

---

[9] The WARN Act defines the term "affected employees" as "employees who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer." 29 U.S.C. § 2101(a)(5).

fifty employee threshold for actionability articulated by the WARN Act.  See 29 U.S.C. §§ 2101(a)(2), (3).  Accordingly, WGI's partial motion for summary judgment with respect to the WARN Act claim will be granted.

**IV.     Conclusion**

Having concluded that fewer than fifty WGI employees suffered an "employment loss" as defined by the WARN Act, the court will grant defendants' motion for partial summary judgment (Doc. 23) with respect to the WARN Act claim.  Only a state law claim remains pending in this case.  The court has discretion to entertain state law claims in appropriate circumstances, but the parties have not addressed whether retention of jurisdiction would be justified in the instant case.  See 28 U.S.C. § 1367(c) ("The district court[] may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); see also Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.") (emphasis added).  Therefore, the court will permit the parties to submit briefs

on the issue of whether the court should exercise jurisdiction over the remaining state law claim despite the grant of summary judgment with respect to the federal claims. An appropriate order will issue.


        /s/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:       March 14, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LORA BAKER**, et al., | : | CIVIL ACTION NO. 1:06-CV-1874 |
| Plaintiffs | : | (Judge Conner) |
| v. | : | |
| **WASHINGTON GROUP INTERNATIONAL, INC.**, | : | |
| Defendant | : | |

## ORDER

AND NOW, this 14th day of March, 2008, upon consideration of defendant's motion for partial summary judgment (Doc. 23), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Defendant's motion for partial summary judgment (Doc. 23) is GRANTED.

2. The Clerk of Court is directed to defer the entry of judgment until the conclusion of this case.

3. On or before April 1, 2008, each party shall file a brief addressing the issue of the discretionary exercise of the court's supplemental jurisdiction over the remaining state law claim.

        /s/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge